UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Estate of GRACE H. DOHRING, deceased
and her heirs, c/o Deborah Saybolt,          Case No.
                                             Hon.
        Plaintiff,                           Circuit Court Case No. 23-012805-CZ

v.

WASHINGTON NATIONAL INSURANCE CO.,
an Indiana company,

        Defendants.
_____/

Deborah Saybolt (P77631)              David W. Centner (P43071)
Attorney for Plaintiff                CLARK HILL PLC
1025 Country Club Road                Attorneys for Defendant
Bloomfield Hills, MI 48304            200 Ottawa Avenue NW, Suite 500
(248) 882-4615                        Grand Rapids, MI 49503
d_saybolt@yahoo.com                   (616) 608-1106
                                      dcentner@clarkhill.com
_____/

**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION**

TO:     Clerk of the Court
        Counsel of Record

        Defendant  Washington  National  Insurance  Co. ("Defendant"),  files  this

Notice of Removal under 28 USC §1446(a).

**Introduction**

1.      Plaintiff is The Estate of Grace H. Dohring, deceased and her heirs, c/o Deborah Saybolt, ("Plaintiff"); Defendant is Washington National Insurance Co. ("Defendant").

2.      On or about October 4, 2023, Plaintiff filed a six-count Complaint and Demand for Jury Trial against Defendant in the Circuit Court for Wayne County, Michigan. The Summons, Complaint and Demand for Jury Trial, constitute all process, pleadings, and orders received by Defendant in this action.

3.      Defendant was served with the Complaint on October 6, 2023. Defendant files this notice of removal within the 30-day time period required by 28 USC §1446(b)(1).

**Basis for Removal**

4.      Removal is proper because there is complete diversity between the parties. 28 USC §1332(a); *Strong v Telectronics Pacing Systems, Inc.,* 78 F3d 256, 259 (6th Cir. 1996). Plaintiff is an Estate filed in Wayne County, Michigan. The decedent resided in Wayne County, Michigan at the time of her death. Plaintiff is a citizen of Michigan under 28 U.S.C. § 1332(c)(2). *Please see Plaintiff's Complaint ¶1* (**Exhibit 1**). Defendant is an Indiana corporation with its principal place of business in Indiana and is a citizen of Indiana under 28 U.S.C. § 1332(c)(1). *Please see Plaintiff's Complaint ¶2* (**Exhibit 1**); *Affidavit of Rachel Spehler* (**Exhibit 2**).

2

5.     Complete diversity of citizenship exists between the parties for purposes of diversity jurisdiction under 28 USC §1332(a). The substantive allegations of Plaintiff's Complaint state the amount in controversy exceeds $75,000, exclusive of interest and costs.  In fact, Plaintiff claims "over $330,000" in damages, "plus . . . penalties, treble damages . . . and attorney fees." *Please see Plaintiff's Complaint ¶¶9, 57, 93 and Relief Requested paragraph* (**Exhibit 1***)*.

6.     All pleadings, process, orders, and other filings in the state court action are attached to this notice as required by 28 USC §1446(a) (**Exhibit 1**).

7.     This Notice of Removal has been filed within thirty (30) days after such service of process, as required by 28 USC §1446(b)(1).

8.     Venue is proper in this district under 28 USC §1441(a) because the Wayne County Circuit Court is located in the Eastern District of Michigan, Southern Division.

9.     Defendant will promptly file a copy of this Notice of Removal with the clerk of the Wayne County Circuit Court where the action has been pending and a copy has been served on Plaintiff's counsel as verified by the attached Proof of Service.  28 USC §1446(d).

10.    By removing this action from Wayne County Circuit Court, Defendant neither waives any defenses or objections available to it nor does it admit any of the allegations in Plaintiff's Complaint.

## **Conclusion**

For the reasons set forth above, Defendant Washington National Insurance Co. hereby remove this action to the United States District Court for the Eastern District of Michigan, Southern Division.

Dated: November 3, 2023    CLARK HILL PLC


By: /s/ David W. Centner
  David W. Centner (P43071)
  200 Ottawa Avenue NW, Suite 500
  Grand Rapids, MI 49503
  Telephone: 616-608-1106
  E-mail: dcentner@clarkhill.com

  *Attorneys for Defendant,*
  *Washington National Insurance*
  *Company*

---

### **Proof of Service**

I hereby certify that on November 3, 2023, I electronically served the aforementioned documents upon counsel of record via counsel's email address and physical mailing address through the U.S. Mail.

/s/ David W. Centner

---

# EXHIBIT 1

Approved, SCAO

| | | | Original - Court | | |
|---|---|---|---|---|---|
| | | | 1st copy - Defendant | | 3rd copy - Return |

| STATE OF MICHIGAN | | | | CASE NO. |
|---|---|---|---|---|
| | JUDICIAL DISTRICT | **SUMMONS** | 23 - | - GC |
| 3rd | JUDICIAL CIRCUIT | | | |
| WAYNE | COUNTY | | Judge | |

Court address                                                                 Court telephone no.

1201 Coleman A. Young Municipal Center 2 Woodward Ave. Detroit, MI 48226                    313 224- 5706

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
|---|---|---|
| Estate of Grace H. Dohring, deceased<br>c/o Deborah Saybolt<br>1025 Country Club Rd<br>Bloomfield Hills, MI 48304<br>(248) 882 - 4615 | v | Washington National Insurance Company<br>11825 N Pennsylvania St<br>Carmel, IN 46032<br>(317) 817 - 5100  or (888) 690 - 2882<br>c/o Eric Scheible (P54174) |
| Plaintiff's attorney, bar no., address, and telephone no. | | Resident Agent |
| Deborah Saybolt (P77631)<br>1025 Country Club Rd<br>Bloomfield Hills, MI 48304<br>(248) 882 - 4615 | | CSC-Lawyers Incorporating Service Co.<br>3410 Belle Chase Way, Suite 600<br>Lansing, MI 48911<br>(888) 690 - 2882 |

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
- [ ] There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
- [ ] There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
- [ ] It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
- [ ] This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
- [ ] MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
- [ ] There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
- [x] A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in [ ] this court, [x] Wayne County Probate Court (WCPC) reopened probate estate _____ Court, where

it was given case number ___1986 - 793661 - DA___ and assigned to Judge ___Terrance A. Keith___

The action [x] remains [ ] is no longer pending.

Summons section completed by court clerk.                         **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| | | |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**                                   MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

Summons  (3/23)                                                         Case No. 23 - _____ - GC

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

## CERTIFICATE OF SERVICE / NONSERVICE

☐ I served   ☐ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☑ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Fee<br>$ | | Signature |
|---|---|---|---|---|
| Incorrect address fee<br>$ | Miles traveled | Fee<br>$ | TOTAL FEE<br>$ | Name (type or print) |

## ACKNOWLEDGMENT OF SERVICE

! acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____
Attachments (if any)                                Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT

Estate of GRACE H. DOHRING, deceased
and her heirs, c/o Deborah Saybolt

     Plaintiff

v.

WASHINGTON NATIONAL INSURANCE CO.,
    an Indiana company,

     Defendant.

_____/

**COMPLAINT**

Case: 23-01280S  CZ
Hon. _____

| | |
|---|---|
| Deborah Saybolt<br>Attorney for Plaintiff (P77631)<br>1025 Country Club Rd<br>Bloomfield Hills, MI 48304<br>(248) 882 – 4615 | Eric Scheible<br>Attorney for Defendant (P54174)<br>Frasco Caponigro Wineman<br>Scheible Hauser Luttman PLLC<br>1301 W Long Lake Rd #250<br>Troy, MI 48098<br>(248) 420 – 2090 |

_____/

There is a pending reopened probate estate in Wayne County Probate Court, case 1986-793661-DA assigned to Judge Terrance A. Keith for decedent, Grace H. Dohring. The estate had to be reopened (37 years after death) to handle the Washington National Insurance Co. policy that wrongly escheated to the State of Michigan as Unclaimed Property. The case remains pending.

## COMPLAINT AND DEMAND FOR JURY TRIAL

<u>Overview</u>: This case is about the nonpayment of a fully paid up whole life insurance policy owned by the decedent who died in 1986. Washington National Insurance Company concealed and converted the policy proceeds for its own pecuniary benefit for decades — despite knowing *where* decedent lived and *when* she died. These facts were well-known because decedent received a monthly annuity from this same insurer which terminated upon her death. Thus, this Complaint is "self-proving." Now, this insurer must pay 12% statutory compound interest along with other monies for not disclosing the policy for decades. Paying only the face value of the policy, 37 years too late, is unlawful, unjust enrichment for the insurer.

1

NOW COMES Plaintiff, the Estate of GRACE H. DOHRING, by and through her attorney, does hereby complain against Defendant WASHINGTON NATIONAL INSURANCE CO., in a civil action, stating to this Court as follows:

### Jurisdiction and Venue

1. Plaintiff GRACE H. DOHRING, deceased (hereinafter "Plaintiff"), was a resident of Wayne County, Michigan, where the events of this case occurred.

2. Defendant WASHINGTON NATIONAL INSURANCE CO., a.k.a. Wilton Reassurance (hereinafter "Defendant") is an American company with a principal place of business in Indiana. It is authorized through the State of Michigan to sell insurance contracts.

3. Jurisdiction is proper before this Court based on the residence of the parties and because the amount in controversy in this civil action exceeds $25,000.

4. Venue is proper in this Court as incidents giving rise to Plaintiff's claims occurred in Wayne County.

### General Allegations

5. Plaintiff incorporates paragraphs 1 – 4 by reference.

6. Defendant holds itself out to the public to be a life and health insurance company capable of servicing the insurance needs of consumers in Michigan.

7. Defendant sold various types of life insurance contracts.

8. Policies could be merged, separated, or transformed into different types of policies or benefits (e.g., annuity payments for life or lump sum death benefits, to name two examples).

9. Defendant is liable for paying annuity and/or death benefits to its life insurance customers.

2

10. Defendant knew that beneficiaries and/or family members of the insured were often not privy to the changing details of the insurance contracts — or the particular type of contracts actively in force. Therefore, beneficiaries relied on Defendant to competently and honestly communicate with named and/or successor beneficiaries after a death occurred.

11. Plaintiff was a paying and/or paid up insurance customer of Defendant insurer.

12. Plaintiff died in 1986, at age 64, after living in a sudden and unexpected comatose state.

13. At the time of Plaintiff's death, she was receiving a monthly annuity check from Defendant.

14. Defendant was notified of Plaintiff's death in 1986.

15. Notice of Plaintiff's death on one policy was notice of her death on all policies owned by her.

16. Defendant comprehended the death notice by discontinuing Plaintiff's monthly annuity.

17. Defendant was aware of Plaintiff's address because it quit mailing the monthly annuity checks to Plaintiff's home address in Wayne County.

18. Defendant also had an alternative, secondary address for Plaintiff at the time of her death at another residence in Wayne County.

19. Defendant made no attempt after Plaintiff's death to alert her heirs to another fully paid up whole life insurance policy, presumably policy 050-104020.

20. Defendant did not communicate with Plaintiff's heirs regarding an additional fully paid up life insurance policy (050-104020), such as through annual statements of the cash balance.

21. Since Defendant knowingly held thousands of Plaintiff's cash-money on deposit — both before and after her death — it had a financial and fiduciary obligation to keep in periodic contact or communication, so as not to willfully, negligently, or otherwise 'lose' her money.

22. Like financial institutions, Defendant was required to periodically communicate with Plaintiff regarding her account and information on file. Defendant did not communicate.

3

23. Defendant, who held a fully paid up whole life insurance policy, had duties similar to other financial institutions, such as banks, credit unions, and other money holders *not* to abscond with money on deposit or when needed — here, upon Plaintiff's death.

24. Policy 050-104020 paid up whole life insurance policy is *part* of this litigation. It is presumably this policy that wrongly escheated to the State of Michigan, decades after Plaintiff died. There may have been additional active policies.

25. Plaintiff's estate was closed in approximately 1987. It has remained closed until 2023, when it needed to be reopened to handle this unexpected, after-discovered life insurance policy.

26. Plaintiff's heirs did not have an affirmative duty to check for MI Unclaimed Property.

27. Defendant has some of the poorest customer ratings among insurers for the problems highlighted in this Complaint.

28. Neither a statute of limitations or statute of repose have run, including because of defendant's concealment and conversion of Plaintiff's assets derived from her insurance policy benefits.

29. Defendant knew of other facts which will come into evidence as this case develops through the course of discovery.

### Count I – Breach of Contract

30. Plaintiff incorporates paragraphs 1 – 29 by reference.

31. Defendant breached its contractual duties in the insurance contract(s).

32. A contract is a promise for a promise; a contract may be written, oral, or contained within less formal communications.

33. Contacts have an implied covenant of good faith and fair dealing.

4

34. A breach of contract occurs when an instrument is executed but the terms therein are not adhered to.

35. Here, Defendant promised to pay out life insurance benefits in exchange for Plaintiff's premium payments on each of her life insurance contracts.

36. Buying life insurance is buying 'peace of mind.' Per the State of MI, DIFS (Department of Insurance and Financial Services) website: Most people view insurance as a type of a "financial security" that can protect them against financial burdens associated with property loss, accidents, or injuries. (*See* https://www.michigan.gov/difs/consumers, accessed 9/28/2023.)

37. Planning for her death required Plaintiff's forward thinking to assure that her various expenses would be covered and her surviving heirs would benefit. She bought into the 'peace of mind' philosophy, only to have her benefits unlawfully taken by Defendant.

38. Plaintiff was associated with at least the following contractual obligations from Defendant:

    a. 050-104020    $5,000 face value whole life insurance since approximately 1944.
    b. 119059        $4,000 face value whole life insurance since approximately 1947.
    c. 121514        details unknown.
    d. 5012479       details unknown.

39. Per the Better Business Bureau (BBB), Plaintiff's family is one of many similarly situated heirs dependent on the honesty and integrity of the Defendant, who was entrusted with cash deposits, but were wrongly denied life insurance benefits by Defendant. (*See* extremely poor one star of a five star rating system at https://www.bbb.org/us/in/carmel/profile/insurance-companies/washington-national-insurance-company-0382-90015174/customer-reviews, accessed 9/28/2023.)

40. No accountability — or corporate moral compass — allowed Defendant to take unlawful advantage of Plaintiff's heirs by keeping 'secret' the policy(ies) from the heirs who relied on Defendant to disclosure all of Plaintiff's policies when notified of her death.

41. Defendant has claimed that no periodic statements were required. Plaintiff disputes that. Defendant must comply with prudent MI insurance practices and DIFS standards.

42. DIFS states that insurers have "fiduciary responsibility and record keeping" duties.

43. It appears implausible that an annual or periodic accounting of Plaintiff's money is not required, as Defendant has claimed. Reasonable prudence suggests that a holder of money in trust for the future has customer reporting and accounting obligations. Other insurers of long-standing life insurance contracts provide annual statements; why not Defendant?

44. It would be absurd and unreasonable for Defendant to suggest that it was not obligated to disclose all insurance contracts when informed of a death of an insured person.

45. If the contract did not state that Defendant had to disclose other existing policies upon a death notice, good faith and fair dealing would presume such honesty and/or competence.

46. Defendant's lack of periodic statements virtually guaranteed that a policy would be 'lost,' as if by design. Periodic statements are a fair expectation of a long-term money holder.

47. Periodic statements were necessary to overcome Defendant's business "errors and omissions," whether willful or intentional for profit motives, or unintentional.

48. Periodic statements are sensible to keep the insurer honest. Hiding a contract benefit does not occur without the tacit support of Defendant's management who could have prevented it.

49. If Defendant wishes to maintain that periodic statements are not necessary or required, then that is part of the problem that allowed it to not live up to its contractual obligations.

50. When Plaintiff's heirs needed to collect on a life insurance death benefit, they were at their most vulnerable. Defendant used this to their unfair financial advantage.

51. Plaintiff's heirs were led to believe by Defendant that all benefits were handled though the 1986 probate estate. Evidence of the 050-104020 policy being probated is in that record.

52. It was in recent hindsight — and through a policy wrongly escheating to the State of MI as unclaimed property — that Plaintiff's heirs discovered the policy hidden by Defendant.

### Count II – Statutory 12% Interest is Due Under MCL 500.2006

53. Plaintiff incorporates paragraphs 1 – 52 by reference.

54. Michigan Statute MCL 500.2006 (1) – (4) prescribes the remedy for an insurer who withholds money that belongs to a paying customer, as occurred in this case.

55. The statutory interest rate is 12% annually compounded that Defendant must pay.

56. Here, simple interest means compounded once a year, rather than daily, monthly or other compounding period. It does not mean never compounded.

57. Annual interest compounded over years 1986 – 2023 is **$331,159** owed to Plaintiff where:
    a. 'Present' value = $5,000 (in 1986)
    b. Interest rate = 12% annually      .
    c. Compound period = 37 years
    d. 'Future' value = $331,159 (in 2023)

58. Defendant has *already acknowledged* that 12% interest is due. Plaintiff received a token interest check for $241.64, for about 147 days rather than the 37 years actually due.

59. By hiding the 050-104020 policy for decades and then letting it escheat to the State of Michigan, Defendant tried to do an unfair "end run" around the 12% interest statute.

60. When the face amount of the presumed 050-104020 policy escheated to the State of MI, interest since 1986 should have been included by Defendant, at a minimum.

61. Defendant knew or should have known that decades of interest was due before the funds escheated to the State of MI; not paying interest was more hiding of money due to Plaintiff.

62. By not paying interest on the escheated amount of money, Defendant profited excessively by wrongfully holding and using Plaintiff's money for decades.

### Count III – Negligence

63. Plaintiff incorporates paragraphs 1 – 62 by reference.

64. Defendant was at least negligent, if not grossly negligent, in hiding Plaintiff's money.

65. Under Michigan Law, ordinary negligence is conduct of a person or entity that falls below the legal standard established to protect others from unreasonable risk of harm.

66. The definition of gross negligence is found in MCL 691.1407(8)(a) as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

67. When Defendant sold Plaintiff at least two whole life insurance policies, it undertook a **duty** to hold her money in a responsible manner, such that life insurance benefits could be paid.

68. Defendant was under a **duty** to act with care so that Plaintiff and her heirs could discover and receive the fully paid up benefits and not be harmed with the financial loss of money.

69. Defendant **breached** its duty of care by allowing Plaintiff's policy(ies) — worth thousands of dollars — to be hidden and 'lost.' Whether though neglect or a willful profit improvement scheme, Plaintiff's own money did not benefit her or her heirs. Rather it benefited Defendant who so wrongly used Plaintiff's money — interest free, for decades.

70. Defendant failed to use all reasonable efforts to protect Plaintiff from loss of her life insurance benefit money. If Defendant had taken reasonable and prudent steps to maintain communication at Plaintiff's known address(es), her family would have known of an additional active life insurance policy both before and after Plaintiff's death.

8

71. Defendant **caused** Plaintiff's heirs to be separated from money that was intended to be used for family needs and financial security.

72. "**But for**" Defendant's negligence, including in record keeping, required communication, and providing contact with Plaintiff, her heirs would have known that another major life insurance policy (presumably 050-104020) had not been collected.

73. Defendant's acts and failures to act were the **proximate cause** of Plaintiff's **harm**.

74. By withholding Plaintiff's money for decades, the pecuniary **harm** was a loss of the time-value of money. This is remedied, in part, by the 12% interest rate of MCL 500.2006.

75. The unauthorized use of Plaintiff's money was a windfall bonus to Defendant, making its profitability look artificially improved, which is a deceptive business practice.

76. Here, the negligence is egregious because Defendant knew of Plaintiff's death. It had actual and constructive notice of Plaintiff's death in 1986.

77. Defendant had actual notice of Plaintiff's death because a death certificate was required to determine which month her annuity would be discontinued.

78. Defendant had constructive notice of Plaintiff's death because it *comprehended* the notice by *acting* to discontinue her monthly annuity.

79. Since a monthly annuity check was mailed to Plaintiff's residence, Defendant knew *where* to contact her next of kin and personal representative. There was no excuse for policy hiding.

80. Defendant knew of Plaintiff's death, but for reasons best known to Defendant, chose not to disclose the existence of another fully paid off policy worth thousands of dollars.

81. The remedy for the **harm** is for Defendant to pay 12% compounded interest for the extraordinary delays and the extra time, effort, expense, and difficulties in late collection.

82. Plaintiff seeks all attorney fees and costs for this case, Personal Representative fees and all other costs for the reopened probate case, plus any additional remedies.

### Count IV – Breach of a Fiduciary Duty Within a Special Relationship of Trust and Reliance

83. Plaintiff incorporates paragraphs 1 - 82 by reference.

84. Life insurers have a fiduciary obligation to protect customer's money.

85. An insurer holding a fully paid up whole life insurance policy worth thousands of dollars, has a fiduciary duty to preserve and protect that money for its intended purpose.

86. Defendant cannot "have it both ways." If it wants to claim that periodic notices are not required, it must have effective procedures in place to prevent 'losing' a customer's money.

87. Without periodic notices of Plaintiff's cash held by Defendant, that implies a heightened responsibility of trust and reliance; in short, a special relationship.

88. No such notices were received at two family residences in Wayne County.

89. Defendant was holding in trust a fully paid up death benefit that belonged to Plaintiff. Thus it had a fiduciary obligation to disgorge the benefit upon notice of Plaintiff's death.

90. Notice of Plaintiff's death occurred in approximately 1986, both actually and constructively. Thus, it is a "self-proving" claim: Defendant *knew* that Plaintiff died because it discontinued her monthly annuity check upon notice of her death.

91. Defendant was obligated to perform its fiduciary job of communicating and disclosing, rather than hiding and using Plaintiff's whole life policy upon her death and for decades afterwards.

92. Defendant continued to take advantage of Plaintiff's heirs by making it difficult, if not impossible, to talk to a responsive human being to resolve this matter — whether regarding the money stuck at the State of MI Unclaimed Property, or an unwillingness to negotiate for

a fair settlement of the interest due — or trying to "wear them down" through obfuscation, noncommunication or ignoring emails, phone calls, and mailings to their corporate offices.

93. Defendant's strategy has been to try to force Plaintiff's heirs to "let them get away with" various misdeeds, including not paying over $330,000 in back interest currently due.

## Count V – Fraudulent Concealment and Unfair Business Practices

94. Plaintiff incorporates paragraphs 1 – 93 by reference.

95. Defendant concealed Plaintiff's life insurance policy that escheated to the State of MI.

96. Fraudulent concealment in Michigan is found in MCL 600.5855:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action maybe commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

97. As the Michigan Court of Appeals explained in *Tonegatto v Budak* (112 Mich. App. 575, 583, 1982) fraudulent concealment occurs when a party employs "artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action . . . ."

98. The responsibility to contact Plaintiff's heirs was within Defendant's control and knowledge to avoid concealing the presumed 050-104020 policy. When Defendant willfully or otherwise 'lost' Plaintiff's active life insurance policy, concealment occurred.

99. When Defendant refused to provide periodic statements to Plaintiff or her heirs regarding the cash value of an active policy, concealment was condoned by Defendant and therefore inevitable. It was a wrongful profit-improvement scheme.

100. These actions and inactions occurred despite Defendant being aware of Plaintiff's date of death and her family's address.

101. When Defendant's concealment of Plaintiff's policy is a foregone conclusion, it is willful because preventable harm to Plaintiff was permitted, if not encouraged, to happen.

102. To facilitate the concealment, Defendant engaged in various "unfair methods of competition and unfair or deceptive acts" as outlined in MCL 500.2026: Course of conduct indicating persistent tendency to engage in that type of conduct.

103. Under MCL 500.2026:

> Unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, other than isolated incidents, are a course of conduct indicating a persistent tendency to engage in that type of conduct and include (1) (a) - (n) and (2): The failure of a person to maintain a complete record of all the complaints of its insureds which it has received since the date of the last examination is an unfair method of competition and unfair or deceptive act or practice in the business of insurance.

104. Defendant would not have been able to conceal Plaintiff's policies for so long without such unfair tactics. MCL 500.2026 reads like a Washington National Insurance Company 'play' book, including, but not limited to:

> (a) misrepresenting insurance policy facts, (b) failing to acknowledge communications, (c) failed investigations, (d) refusing to pay claims, (e) failing to affirm coverage of claims, (f) failing to pay claims not in dispute promptly in good faith, (g) **compelling the insured to initiate litigation to settle a claim**, (h) low-balling settlement offers, (l) **delaying the investigation or payment of claims by requiring duplicate efforts and barriers**, (m) failing to promptly settle claims, (n) failing to explain claim denials.

105. Under MCL 500.2026 'unfair insurance trade practices,' for short, 'bad faith' is not required or needed to be proven. Rather it is the preventable delays, stall tactics, the strong-arm strategies to confuse, deceive, and **low-ball claimants into submission** that are at the heart of the unfair insurance trade practices. These effectively conceal all or part of

Plaintiff's legitimate claims, rather than honestly payout what is due to her heir claimants. This is what Defendant has done, chronically and repeatedly; this is how it operates.

106. Defendant's claimed attempts to find Plaintiff's heirs — decades after Plaintiff's death — were 'too little, too late' because sending letters to virtual strangers at places around the country were unconvincing, risky, and ineffective, as if by design.

107. Defendant's feeble 'window dressing' attempts to locate heirs, decades too late, were egregious because it had the proper address for Plaintiff's family both before and after her death. It was merely a way to withhold and diminish the money due to Plaintiff's heirs.

108. Defendant's escheating the 050-104020 policy money to the State of MI should be viewed as a "work around" to cover-up the 12% statutory interest that was due to Plaintiff's heirs.

109. Further, Defendant has off-shored its customer service department. The effect is to frustrate and discourage consumers, such as Plaintiff's heirs, from seeking a remedy for Defendant's wrongful business practices. Plaintiff's heir was refused an empowered human to resolve. Calls to customer service resulted in speaking to mere message-takers, which sometimes generated a completely *useless* form letter. This is obfuscation by Defendant.

110. Plaintiff's heirs have been forced into litigation when numerous letters and attempts to reach a fair settlement have been met with resistance and/or silence.

111. Consistent with Plaintiff's heir's experiences, complaints to the Better Business Bureau (BBB) and in various Market Performance Report audits show a pattern and practice of arbitrary claims denials, lengthy delays, and nonpayments. Typical of the complaints are that Defendant is happy to take customers money, but will do everything in its power to prevent consumers from receiving the fair, reciprocal benefits that they paid for.

**Count VI – Money Embezzlement and Conversion — a Long-Standing Business Practice**

112. Plaintiff incorporates paragraphs 1 – 111 by reference.

113. Embezzlement is the fraudulent taking of personal property by someone to whom it was entrusted.

114. Conversion is the wrongful taking of someone's money or property and using it as if it were their own.

115. Plaintiff entrusted thousands of dollars of life insurance policy money to Defendant.

116. Defendant wrongfully took Plaintiff's fully paid up life insurance money from the time of her death to the present. Defendant had use of Plaintiff's money as if it were their own.

117. Conversion is found in Michigan under MCL 600.2919a: Recovery of damages, costs, and attorney's fees by person damaged; remedy cumulative.

118. Treble damages plus attorney fees and costs are the remedy, which Plaintiff seeks herein.

119. Plaintiff's heirs have not had the use of the insurance policy money benefit for over 37 years. This economic loss warrants the 12% statutory interest, and more. The opportunity loss can be remedied with additional money that comprehends the time value of the money lost and the difficulty, strain, and time burdens on Plaintiff's heirs.

120. Plaintiff's heirs *still* do not have the face value of the policy that escheated to the State of MI. It has been difficult and time consuming to reopen a 37 year old probate estate. The burden to collect the money wrongly escheated to MI belongs to the Defendant.

121. Plaintiff's probate estate was settled in 1987. If Defendant had not embezzled and converted Plaintiff's money to its own — and not exploited Plaintiff's heirs — her heirs would not have had to expend the extraordinary time, cost, stress, and resources to reopen

14

the estate. It should be Defendant's burden and penalty to handle this, including hiring an accountant for the estate tax returns for each year the estate must remain reopened.

122. The time, effort, frustration, and costs of Defendant's conversion has been unduly onerous. Plaintiff's heir repeatedly tried to negotiate against an on-going corporate "brick wall" of misconduct and silence by Defendant.

123. When Defendant finally faced up to its egregious misconduct — decades after Plaintiff's death — it had an obligation to do more, including adding back-interest to the policy proceeds before it tried to 'bury' it by letting the proceeds escheat to the State of MI.

124. Under MCL 600.2919a Recovery of damages, costs, and attorney's fees by person damaged; remedy cumulative. Sec. 2919a. (1) A person damaged as a result of either or both of the following [forms of conversion] may recover **3 times** the amount of actual damages sustained, plus costs and reasonable attorney fees

125. Plaintiff's heirs respectfully request treble (3x) damages for this egregious embezzlement and conversion of their money.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands a judgment of more than $25,000 (i.e., over $330,000) against Defendant, plus interest, penalties, treble damages, costs and attorney fees so wrongfully incurred.

Respectfully submitted:

/s/ D. D. Saybolt

_____

Deborah Saybolt
Attorney for Plaintiff
1025 Country Club Rd
Bloomfield Hills, MI 48304
(248) 882 – 4615

15

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT

Estate of GRACE H. DOHRING, deceased
and her heirs, c/o Deborah Saybolt

Plaintiff

v.

WASHINGTON NATIONAL INSURANCE CO.,
an Indiana company,

Defendant.

**DEMAND FOR
JURY TRIAL**

Case: 23 – 012805 – C 2
Hon. _____

_____/

Deborah Saybolt
Attorney for Plaintiff (P77631)
1025 Country Club Rd
Bloomfield Hills, MI 48304
(248) 882 – 4615

Eric Scheible
Attorney for Defendant (P54174)
Frasco Caponigro Wineman
Scheible Hauser Luttman PLLC
1301 W Long Lake Rd #250
Troy, MI 48098
(248) 420 – 2090

_____/

## <u>DEMAND FOR JURY TRIAL</u>

NOW COMES Plaintiff through her counsel, Deborah Saybolt, and hereby relies upon the trial

by jury demand filed in the original complaint. Plaintiff hereby demands, trial by jury pursuant to

<u>MCR 2.508</u>, Jury Trial of Right.

Respectfully submitted:

/s/ D. D. Saybolt

_____
Deborah Saybolt (P77613)
Attorney for Plaintiff
1025 Country Club Rd
Bloomfield Hills, MI 48304
(248) 882 – 4615

Dated:  10/4/2023

16